[Sac. No. 738. In Bank.—June 30, 1900.]

## HOUSER & HAINES MANUFACTURING COMPANY, Appellant, v. R. L. HARGROVE, Respondent.

APPEAL — JUDGMENT — LAPSE OF TIME.—An appeal from a judgment taken nearly two years after the rendition and entry of the judgment cannot be entertained.

ID.—NEW TRIAL ORDER—PROCEEDING INDEPENDENT OF JUDGMENT.—A motion for a new trial under the code is a proceeding independent of the judgment, and may be granted even after the judg-

ment has been affirmed upon appeal; and an order granting or denying a new trial may be reviewed upon an appeal taken in time, notwithstanding the judgment may be final.

SALE—HARVESTER—CHANGE OF TITLE—LATER CONDITIONAL SALE—TITLE OF SUBSEQUENT VENDEE.—Where a harvester was sold and delivered to the purchaser, under an agreement to give notes for the purchase money, and under the terms of an absolute sale passing title to the purchaser, the sale cannot be afterward converted into a conditional sale, without any change of possession, by a mere written agreement between the parties, so as to affect the title of a subsequent vendee of the purchaser to whom the possession was delivered.

ID.—CONDITIONAL SALES NOT FAVORED.—Conditional sales intended as security, in lieu of a chattel mortgage upon the property, are not favored; and, by reason of the opportunities for fraud presented by such contracts, courts are inclined to scrutinize them closely.

ID.—TAX TITLE—VALIDITY OF ASSESSMENT.—Taxes were properly assessed to the original purchaser of such harvester, while in his possession and control, with *indicia* of ownership invested under the original purchase thereof; and the addition of other names on the assessment-roll did not invalidate the assessment to him. The taxes being delinquent, the assessor's sale of the harvester to the highest bidder passed title to such bidder, irrespective of the amount of the delinquent tax.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial. W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Louttit & Middlecoff, for Appellant.

R. L. Hargrove, Respondent *in pro. per.*

VAN DYKE, J.—The appeal in this case is taken from the judgment, as well as from the order denying plaintiff's motion for a new trial. This judgment was entered on the twelfth day of August, 1897, and the notice of appeal served August 2, 1899, nearly two years after the rendition of the judgment. This court, therefore, cannot entertain the appeal from the judgment. The order denying the plaintiff's motion for a new trial was entered June 6, 1899, and the notice of appeal therefrom, as already shown, was in time. The motion for a new trial, under our code and practice, is a proceeding independent of the

judgment. The motion may be granted even after a judgment has been affirmed on appeal. (*Brison v. Brison,* 90 Cal. 327; *Riverside Water Co. v. Gage,* 108 Cal. 243.) The action is to recover the possession of one Haines-Houser improved combined harvester, of the alleged value of one thousand dollars. The court below found that the plaintiff was not at the time of the commencement of the action the owner or entitled to the possession of the harvester, and further found that the defendant was at the time the action was commenced, and still is, the owner and entitled to the possession of the harvester, and that the value thereof was one thousand dollars. Judgment was entered accordingly.

The plaintiff relies for recovery upon the following receipt or agreement:

"Stockton, Cal., August 4, 1893.

"Received of Houser, Haines & Knight one Haines-Houser improved combined harvester, No. ——, for which, delivered at Stockton, Cal., upon the terms stated below, the undersigned agrees to pay to Houser, Haines & Knight the sum of fourteen hundred 00-100 dollars in U. S. gold coin as follows, to wit: $500.00 by his note September 1, 1893; $500.00 by his note September 1, 1894, to bear interest at the rate of ten per cent per annum from September, 1893, until paid, and $400.00 by his note September 1, 1895.

"And it is agreed that said Houser, Haines & Knight do not part with the title to said harvester until all said deferred payments or notes are fully paid; that time is of the essence of the agreement; that should the undersigned make default in any of said payments, then said Houser, Haines & Knight shall, at their option, and without notice, terminate this agreement, and with or without legal process take and retain said harvester, wherever it may be situated, and all moneys paid by the undersigned prior to such default shall be compensation for the privilege of using said harvester prior to such default; and should Houser, Haines & Knight, by reason of such default, incur any expense, the undersigned agrees to reimburse them the sum total of all such expenses, including reasonable counsel fees.

"I. M. ROWE."

Indorsed: "The Houser & Haines Mfg. Co., by G. W. Haines, Vice-President."

In pursuance of said receipt or agreement said Rowe at the same time as the date thereof executed the notes therein mentioned, and subsequently paid the sum of seven hundred and fifty dollars on the same.

The court, however, finds, and the evidence supports the finding, "That on the tenth day of June, 1893, Houser, Haines & Knight delivered to I. M. Rowe the harvester described in plaintiff's complaint upon the following order and the terms and conditions mentioned therein:

"$1400.00.

"Messrs. Houser, Haines & Knight:

"Please ship to the undersigned one harvester, twenty-foot cut, including the usual extras (see printed list of extras furnished).

"Consign to I. M. Rowe, Athlone. For which the undersigned agrees to pay $500.00 September 1, 1893; $500.00 September 1, 1894, and $400.00 September 1, 1895; all amounts due after September 1, 1893, to bear interest at ten per cent per annum until paid.

"Machine to be delivered free on board cars or boat in Stockton.

"These machines are all warranted to be well made, of good material, and durable, with proper care. If, upon one week's trial, the machine should not work well, the purchaser shall give immediate notice to said Houser, Haines & Knight, or their agent, and allow time to send a person to put it in order. If it cannot then be made to work to the entire satisfaction of the purchaser, he shall return it at once to the agent of whom he received it, and his payment, if any has been made, will be refunded. Continuous use of the machine, or use at intervals through harvest season, shall be deemed an acceptance of the machine by the undersigned.

"Dated the 10th day of June, 1893.

"Postoffice, Minturn; county, Fresno; state, Cal.

"I. M. ROWE."

"That said harvester was delivered to said I. M. Rowe at Minturn, in the county of Fresno, that said I. M. Rowe then and there accepted said harvester, and at all times since said tenth day of June, 1893, up to June 2, 1896, said I. M. Rowe

retained and had possession, charge, and control of said harvester in said county of Madera."

The court also found that said Rowe gave in the harvester in question to the assessor of Madera county for the year 1896, and that it was sold for nonpayment of taxes thereon on June 2, 1896, and bid in by the defendant Hargrove, to whom a certificate of sale was issued by said assessor. The court also finds that on June 2, 1896, said Rowe executed a bill of sale of his right, title, and interest in said harvester to the defendant, and that thereupon the possession of said harvester was delivered to the defendant.

It appears, therefore, that upon June 10, 1893, said Rowe offered to purchase the harvester in question from Houser, Haines & Knight on the terms stated in his written offer, the machine to be delivered as therein stated. Houser, Haines & Knight accepted that offer by delivering the machine according to said offer. The sale, therefore, became complete on the delivery of the machine to Rowe. The character of the transaction was fixed at that date. After the purchase and receipt of the machine, as stated, Rowe used it for his harvesting that season for about two months before the receipt relied upon by the plaintiff was given. The instrument of August 4th says: "Received one Haines-Houser improved combined harvester, No. ——, for which, delivered at Stockton, California, upon the terms stated below, he agrees to pay," etc. The offer to purchase and order for the machine of June 10th says: "Please ship one harvester, twenty-foot cut, including the usual extras."

It would appear from the language used in the two instruments that they referred to different machines, but the parties at the trial, and also on appeal, seemed to consider them as referring to one and the same machine. The instrument of August 4th is drawn as though the machine therein referred to was thereafter to be delivered. It says, "for which, delivered at Stockton," and also recites that Houser, Haines & Knight do not part with the title to the said harvester until all said deferred payments or notes are paid, etc., whereas the fact is, as already shown, that the machine in question had been shipped and delivered to Rowe under and in pursuance of his offer to purchase the same, and that he had been in possession as such purchaser and used such machine for about two months

prior to such receipt of August 4th.  Both the title and possession of the machine had therefore become vested in Rowe long before this attempt to convert an absolute sale into a conditional sale.  From the time the property was delivered to Rowe under his offer of purchase of June 10, 1893, up to the date of the sales to the defendant, three years thereafter, to wit, June 8, 1896, it had remained in the possession and under the control of Rowe as the apparent owner thereof.  Conditional sales intended, as this evidently was, as security in lieu of a mortgage are not favored.  As said in *Stockton Sav. etc. Soc. v. Purvis,* 112 Cal. 241[1]: "By reason of the opportunities for fraud presented by this character of contract, courts are inclined to scrutinize them closely."  (See, also, *Palmer v. Howard,* 72 Cal. 293.)  In *Wright v. Vaughn,* 45 Vt. 369, it was said: "If one sell and deliver property to another absolutely, and the parties subsequently attempt to make it a conditional sale, a change of possession is necessary as against creditors and vendees."  In *Caraway v. Wallace,* 2 Ala. 542, it was said: "A contract absolute in its inception, and consummated by delivery, will not be converted into a conditional sale by an ambiguous phrase indorsed upon it afterward, even if such words would have been its effect if a part of the original contract."

We also think the defendant's title under the tax sale was good.  The harvester was properly assessed to Rowe under section 3628 of the Political Code.  It was in his possession and control when the tax accrued, and he had been invested with all the *indicia* of ownership by the act of the plaintiff and its assignors.  The addition of other names to that of Rowe on the assessment-roll did not invalidate the assessment to him, and the sale (the property being personal) was properly made to the highest bidder, irrespective of the amount of the delinquent tax.

The court below correctly held, upon the facts found, that the sale to Rowe was absolute and not conditional; that plaintiff is not the owner or entitled to possession of the property in question, but that defendant is such owner and entitled to possession.

Order affirmed.

McFarland, J., Temple, J., and Beatty, C. J., concurred.

---

[1] 53 Am. St. Rep. 210.